SECURITY COMPANY, Appellee, v. ELMORE M. KENT et al., Executors, Appellants.

1. Mortgage: CONSIDERATION: FRAUD OF MORTGAGEE'S AGENT. Where C., having land mortgaged to S., employed a loan agent to negotiate for him another mortgage upon the same land with which to pay off the former mortgage indebtedness, and said loan agent took from C. his note and mortgage for the required sum payable to the order of K., and promised to pay the money received thereon to the satisfaction of the mortgage to S., and the note and mortgage given by C. was accepted by K. under the belief that certain moneys collected by the loan agent for him had been paid to C., but the money was not so paid, nor was it applied upon the mortgage to S., and had in fact been converted by said agent to his own use before the execution of C.'s note and mortgage to K., held, that the note and mortgage to K. were void for want of consideration.

2.    ———: ———: RECOVERY OF MONEY PAID BY MISTAKE.  C. having paid interest upon the amount of his note and mortgage to K. under the mistaken belief that the latter had paid such amount to S. in satisfaction of the mortgage held by him, *held,* that C. was entitled to recover of K. the amount of interest so paid.

*Appeal from Dallas District Court.*—HON.  A.  W. WILKINSON, Judge.

## WEDNESDAY, MAY 27, 1891.

PATRICK J. Collins and his wife, and Elmore M. Kent, Henry B. and Herman L. Kent, as executors of the estate of Darius E. Kent, are defendants in this action.  The plaintiff company brings the action for the foreclosure of a mortgage given by the defendant Collins and wife on the tenth day of May, 1880, to John R. Keep, to secure a coupon note for one thousand dollars.  Keep assigned the note and mortgage to William Bolles, and Bolles to the plaintiff.  On the twenty-fifth day of April, 1885, the defendant Collins and wife executed to Darius E. Kent another mortgage on the same premises, to secure a note for one thousand dollars, because of which the executors of his estate are made parties, and the lien of said mortgage is asked to be made junior to that of the plaintiff.  The executors, by way of answer, aver a payment of the plaintiff's mortgage.  The defendants Collins admit the execution and delivery of the two notes and mortgages, but say that in making the loan from Keep, for which the first note was given, one Hugh R. Creighton was the agent, and was afterwards the agent for the holders of the note, to whom payments of interest were made, upon authority of the holders, and at maturity of said note demanded payment; that Hugh R. Creighton was at that time the agent of Darius E. Kent, at Des Moines, to loan his money, and that Creighton represented to defendants (Collins) that he would procure the money to pay off the plaintiff's mortgage from Darius E. Kent,

and that they executed the note and mortgage to Darius E. Kent under the belief and understanding with Creighton, as agent for Kent, that one thousand dollars had been paid by Kent to Creighton for the plaintiff, in *pro tanto* satisfaction of his mortgage; and that they paid to Creighton ninety-one dollars and fifty cents, being the balance due thereon. They further say, upon information and belief, that the one thousand dollars was never paid by Kent to Creighton for the plaintiff, and that the note to Kent is without consideration. They admit a liability on one of the notes, but deny that they are liable on both. They further say, by way of cross-action against the creditors, that, since making said note to Kent, they have paid to the executors three hundred dollars as interest thereon, and ask that, if the note shall be decreed of no force, they have judgment therefor against the executors. The executors deny that Creighton was the agent of Darius E. Kent in making the loan, and insist that the note is valid, and the mortgage a subsisting lien on the premises superior to the plaintiff's mortgage. The district court found that the note to Darius E. Kent was without consideration, and that the defendants Collins are entitled to recover the amount paid thereon as interest, and that the plaintiff was entitled to a decree, and gave judgment accordingly. The executors appeal.—*Affirmed.*

*Willard & Fletcher*, for appellants.

*Kauffman & Guernsey*, for Security Company, appellee.

*Baker & Haskins*, for Patrick J. Collins *et al.*, appellees.

GRANGER, J.—There is no question in the case as to the validity of plaintiff's note and mortgage, and its

1. MORTGAGE: consideration: fraud of mortgagee's agent.

right of recovery can only be defeated by a finding that the note has been paid. If paid, it must be the result of findings that Hugh R. Creighton was the agent of the plaintiff to receive payment, or had been so held out by plaintiff as to estop it to deny the agency, and that the money was paid to him as such agent. If Creighton ever secured the money as agent for the plaintiff, it came from Darius E. Kent as a consideration for the note made by Collins. This leads us to some extent to consider the relationship of Creighton to the several parties, and his operations in their behalf. By stipulations, it appears "that the Union Loan Association was in fact Hugh R. Creighton, he being the sole proprietor of the company, and its business being in fact his;" also "that on or about the third day of June, 1885, Hugh R. Creighton absconded, having embezzled funds of various parties amounting to many thousands of dollars, and has not been heard from; and that said embezzlement covered a period of two or three years previous to that date." The application of Collins for the loan from Kent was in writing, and constituted Creighton his agent to procure it. It is undisputed that Kent did not forward or pay to Creighton any money for the purpose of the loan, and it is equally undisputed that Creighton had been acting for Kent in making certain collections in Iowa. Of the collections thus intrusted to Creighton was what is known as the "Ratigan Loan" of seven hundred dollars, of which three hundred dollars was paid in the years 1882 and 1883, and the remaining four hundred dollars, with some interest, was paid on the twenty-third day of February, 1885. These payments were made to Creighton, and the money had not been paid to Kent at the time of the application for the Collins loan. There had also been a sale on foreclosure judgment against one Galbreath in favor of Mr. Kent, under the management of Creighton,

and a certificate of the sale of the land for two thousand and seventy dollars was held by Mr Kent; and on the twenty-third of February, 1885, Kent, through Smith & Tennant, at Westfield, New York (the home of Kent), sent the certificate, with another, to Creighton, indorsed in blank by Mr. Kent, with the instruction, "Please sell them, and send some appls. for Mr. Kent to take, to reinvest the money." On the twenty-eighth of February, 1885, Creighton made to the Des Moines Savings Bank his note for three thousand dollars, for which he received the money, and deposited the certificate received from Kent as collateral thereto, and the note has not been paid. The application for the Collins loan from Kent was forwarded by Creighton in a letter dated April 18, 1885, as follows:

"*Smith & Tennant, Westfield, N. Y.*

"DEAR SIRS:—Inclosed find sat. piece of Michael Ratigan, which please have executed and return. The present owner wants to pay. Here also is Pat J. Collins' app. for one thousand dollars, five years, on one hundred and twenty-one acres in Dallas county. This is a good app. Have Kent take it with the balance due him on Galbreath cert. and collection on Ratigan loan above."

May 5, 1885, Creighton forwarded to Smith & Tennant, for Kent, the Collins note for one thousand dollars, with a stated account showing that the amount had been applied therefor from the Ratigan collection and the Galbreath certificate. No money was ever paid by Creighton to the plaintiff or Collins or Kent, and the only theory on which a consideration for the note can be sustained is that the money was so placed in the hands of Creighton, as the agent of the plaintiff or Collins, that Collins is bound thereby. None dispute that the intention was that the money from Kent was to be applied to the payment of the plaintiff's mortgage, and, if the money actually came into Creighton's hands to be thus applied, there is much reason to think that fact

would be conclusive as against Collins; for the agency in that respect is not questioned. But we think the fact is otherwise. The money on the Ratigan claim had all been collected before the Collins application was made, and some of it for two or three years. The Galbreath certificate was also received before the application, and applied by Creighton to his own use some weeks before. Creighton was, during this time, making base misrepresentations to Kent or his agents as to the condition of matters in his hands, and it quite clearly appears from the evidence that, before the application was made by Collins, Creighton had embezzled the certificate and the collections from the Ratigan loan, and that no part of the proceeds therefrom was in his hands at the date of the Collins note to Kent. This fact being established, Creighton never held the money as the agent of Collins or the plaintiff, nor was it ever placed in his hands for that purpose. That Kent supposed the money was there could make no difference. If the Collins application had not been made, Kent's situation would be the same as to Creighton. At the time of the application Creighton had already applied the money to his own use, and became in a short time an absconding debtor. The loss had actually occurred to Kent, though unknown, before Creighton became the agent for Collins to make the loan. It is, then, a fact that Kent paid no consideration whatever for the Collins note. It is said that the note and mortgage are an acknowledgment of the receipt of the money, and the burden is with Collins to show why the money did not come into the hands of Creighton. Conceding the burden to be thus placed, we think the testimony abundant to show that fact. In truth, it is hardly open to question, from a fair consideration of the evidence. This view accords with the finding of the district court, and is conclusive as to the claim of the executors.

II.   It is said that there is no theory on which defendant Collins can recover back the interest paid to the executors on the note.   This interest

**2. ——: ——: recovery of money paid by mistake.**

was paid under a belief that Kent had furnished the money for which the note was given.   It was a plain mistake of facts, and the law clearly justifies its recovery.   AFFIRMED.